**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARION A. HECHT, Receiver for FutureGen Company d/b/a FutureGen Capital, Commercial Equity Partners, Ltd., FGC Distressed Assets Investment #1, LLC, FutureGen Capital DDA CG Fund LLC, FGC Tax Lien Fund #2, LLC, FGC Trading Fund #1 LLC, FGC SPE No 1 LLC, FGC SPE NO 2 LLC, and FGC CM Note Fund,<br><br>                            Plaintiff,<br><br>            v.<br><br>LAWRENCE P. SCHMIDT and DAWN KIL,<br><br>                            Defendants. | Case No. _____ |

**COMPLAINT**

Marion A. Hecht of CliftonLarsonAllen, LLP, as court-appointed receiver for FutureGen Company d/b/a FutureGen Capital, Commercial Equity Partners, Ltd., FGC Distressed Assets Investment #1, LLC, FutureGen Capital DDA CG Fund LLC, FGC Tax Lien Fund #2, LLC, FGC Trading Fund #1 LLC, FGC SPE No 1 LLC, FGC SPE NO 2 LLC, and FGC CM Note Fund LLC (collectively, the "Receivership Defendants"), by counsel, for her Complaint against Lawrence P. Schmidt ("Schmidt") and Dawn Kil ("Ms. Kil"), based on actual knowledge and upon information and belief, states as follows:

**Nature of Proceeding**

1. This action arises out of an offering fraud scheme devised and orchestrated by Schmidt. Schmidt defrauded investors by creating a web of seemingly legitimate companies

that were in fact simply designed to entice investment and conceal his misuse and commingling of funds.

2. Over a six year period, from 2008 through 2014, Schmidt raised nearly $22 million from 232 unsuspecting investors and while payments approximating $11.7 million were made to investors, the remaining $10.3 million was apparently spent by Schmidt in the following manners: (1) acquiring various investments; (2) setting up office locations in Washington, DC (two offices), Marietta, Georgia, Chicago, Illinois, Las Vegas, Nevada and Seattle, Washington; (3) purchasing and maintaining for Schmidt's personal benefit and the benefit of his purported wife, Ms. Kil, two residences in Georgia as well as for the benefit of Ms. Kil's mother, Reta VanDyke, who resided at one of the two residences; (4) mortgaging one of the two residences several years after acquisition and making payments on that mortgage; (5) maintaining for Schmidt's personal benefit a residential condo in the District of Columbia; (6) paying employees at the multiple locations; (7) making payments for commissions and bonuses; (8) making payments for food, lodging and hotels; and (9) making payments to some investors in amounts greater than the investor contributions representing return of phantom profits.

3. Ultimately, when his scheme collapsed and there were no remaining funds, Schmidt fired all his employees and fled the country. Most of the investment vehicles covered a period of five years which dates correlate with the demise of the securities fraud in early 2014.

4. The Receiver in this action seeks to recover, for the benefit of all of the investors in Schmidt's scheme assets transferred from the Receivership Defendants to, for the benefit of, and/or at the request of Schmidt and/or Ms. Kil.

**Background**

5.      In May 2008, Schmidt formed Commercial Equity Partners, Ltd. ("CEP") and began the fraudulent scheme.  CEP's supposed business model was to issue debt securities to investors, many of whom were unsophisticated with limited assets, promising to pay a fixed rate of return, and invest those funds in tax liens, distressed assets, HOA foreclosure properties, and loans.

6.      In 2009, Schmidt formed FutureGen Company d/b/a FutureGen Capital ("FutureGen"), which, although technically a separate entity, was effectively the successor to CEP. Subsequently, he formed FGC Distressed Assets Investment #1, LLC, FutureGen Capital DDA CG Fund LLC, FGC Tax Lien Fund #2, LLC, FGC Trading Fund #1 LLC, FGC SPE No 1 LLC, FGC SPE NO 2 LLC, and FGC CM Note Fund LLC (collectively, the "FutureGen Funds"). FutureGen and the FutureGen Funds operated in the same manner as CEP, issuing debt securities to investors, promising to pay a fixed rate of return, and claiming to invest the money in the asset line designated by the investor, such as tax liens, commercial mortgages, and distressed debt.

7.      Despite Schmidt's creation of a purported series of separate funds, Schmidt and the Receivership Defendants commingled the funds received from investors and failed to use the funds as promised.  Rather than using the funds as represented to investors, the Receivership Defendants under the direction of Schmidt paid back to 106 investors "false profits" of approximately $2 million, which means those investors received the full return of their investments plus an additional amount – all to the detriment of other investors.

8.      In the face of regulatory scrutiny, a lack of new investors and massive obligations to existing investors, Schmidt fled the country in April 2014.  At the time he fled, Schmidt

acknowledged his misconduct and admitted that the liabilities of the Receivership Defendants dwarfed their assets.

9. On June 12, 2014, the Securities and Exchange Commission ("SEC") filed an action against Schmidt and the Receivership Defendants. That case is pending before the United States District Court of the District of Columbia (the "Court") in *SEC v. Schmidt, et al.*, Case No. 1:14-cv-01002-CRC.

10. On June 16, 2014, the Court entered the Order Appointing Receiver, which appointed Marion A. Hecht of CliftonLarsonAllen, LLP (the "Receiver") as temporary receiver for the Receivership Defendants.

11. On July 3, 2014, the Court entered the Order Establishing Receivership Estate and Appointing a Receiver (the "Receivership Order"). Pursuant to the Receivership Order, the Receiver was appointed permanent receiver for the Receivership Defendants to assume control of, marshal, pursue, and preserve the Receivership Assets.

12. The Receivership Assets are defined as all assets of the Receivership Defendants and Schmidt that: "(a) are attributable to funds derived from investors or clients of the [Receivership Defendants and Schmidt]; (b) are held in constructive trust for the [Receivership Defendants and Schmidt]; (c) were fraudulently transferred by the [Receivership Defendants and Schmidt]; and/or (d) may otherwise be includable as assets of the estates of the [Receivership Defendants and Schmidt]." (Receivership Order 1-2).

13. Paragraph 7(B) of the Receivership Order authorizes the Receiver "to sue for and collect, recover, receive and take into possession from third parties all Receivership Assets and records relevant thereto."

14. Further, the Receiver is authorized "to bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging her duties as Receiver" and "to pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Assets or the Receivership Estate." (Receivership Order ¶ 7(I), (J)).

15. "The Receiver shall use her best efforts to determine whether any of Defendant Schmidt's real or personal property was acquired by him using funds other than the proceeds of the alleged fraud. The Receivers shall seize and maintain any such property, but shall not dispose of such property absent further order from the Court authorizing the proposed disposition." (Receivership Order ¶ 20).

16. The Receiver brings this action to recover Receivership Assets transferred to, for the benefit of, and/or at the request of Schmidt and/or Ms. Kil (collectively, the "Defendants").

17. The Receiver has advised counsel for the SEC that she plans to file this Complaint against Schmidt and Ms. Kil to recover the Receivership Assets transferred to, for the benefit of, and/or at the request of Schmidt and/or Ms. Kil and counsel for the SEC does not object to the Receiver commencing this action against Schmidt and Ms. Kil for such purpose.

## Parties

18. Pursuant to the Receivership Order, the Receiver was appointed permanent receiver for the Receivership Defendants to assume control of, marshal, pursue, and preserve the Receivership Assets.

19. Schmidt is an individual believed to have fled the country in April 2014.

20. Ms. Kil, Schmidt's purported wife, is an individual residing in Georgia who may receive service of process at 279 Mountain View Drive, N.W., Marietta, Georgia 30064.

**Jurisdiction and Venue**

21.     Pursuant to 15 U.S.C. §§ 77v(a) and 78aa, federal courts have jurisdiction over all suits in equity and actions at law brought to enforce any liability or duty created by federal securities law.

22.     This Court has ancillary jurisdiction over this action as it is an action commenced by the Receiver to execute her duties as set forth in the Receivership Order.

23.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1367(a) as it is so related to the claims asserted in *SEC v. Schmidt, et al.*, Case No. 1:14-cv-01002-CRC, that it forms part of the same case of controversy.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because:

(a)     a substantial part of the events giving rise to the Receiver's claims against the Defendants occurred in this District:

(b)     this action is ancillary to the SEC proceeding pending in this District, *SEC v. Schmidt, et al.*, Case No. 1:14-cv-01002-CRC;

(c)     the Receiver was appointed in this District;

(d)     this action involves "Receivership Assets" as defined in the Receivership Order; and

(e)     since 2009 this District has been the principal place of business for the Receivership Defendants and the banking relationship was in this District.

**Statement of Facts**

25.     On July 13, 2011, FutureGen issued check no. 5159 from its Bank of America Account #5060 (page 3 of 10 on the account statement) payable to CEP in the amount of

$205,000.00. Copies of check no. 5159 and the account statement are attached hereto as Exhibit A.

26. CEP deposited check no. 5159 into its checking account #7926 at Bank of America on or about July 13, 2011 (page 3 of 8 on the account statement). A copy of the account statement evidencing the deposit is attached hereto as Exhibit B.

27. On July 14, 2011, CEP initiated a wire transfer from its Bank of America #7926 account (page 4 of 8 on the account statement) to The Bowers Law Firm in the amount of $265,349.60 with the reference "279 Mountain View." A copy of the account statement evidencing the transfer is attached hereto as Exhibit B.

28. Upon information and belief, The Bowers Law Firm was the law firm used by the Defendants to conduct the closing for their purchase of 279 Mountain View Drive, N.W., Marietta, Georgia 30064 ("279 Mountain View") in the amount of $275,000.

29. Pursuant to the Warranty Deed dated July 15, 2011, the Defendants took title to 279 Mountain View as joint tenants with rights of survivorship. Notably, the Warranty Deed bears in the upper left hand corner: "Please Return to: THE BOWERS LAW FIRM, LLC". A copy of the Warranty Deed is attached hereto as Exhibit C.

30. As set forth in detail above and in accordance with her obligations under the Receivership Order, the Receiver has determined that Receivership Assets were used by the Defendants to purchase the alleged martial residence of the Defendants located at 279 Mountain View.

31. Additionally, the Receiver has determined that from 2011 through April 2014 Schmidt transferred to Ms. Kil approximately $60,000. These funds are Receivership Assets as the funds are directly traceable to the salary Schmidt received from the Receivership Defendants.

32.     Upon information and belief, there could have been additional payments for the benefit of Schmidt and Ms. Kil related to utility and other payments related to the maintenance of 279 Mountain View.

33.     Because Schmidt was using the Receivership Defendants to operate a securities fraud scheme, all transfers to, for the benefit of, or at the request of the Defendants were made with the intent to hinder, delay or defraud the Receivership Defendants' creditors.

## COUNT ONE
### Fraudulent Transfer – District of Columbia Law

34.     The Receiver incorporates paragraphs 1 through 33 set forth above as if set forth verbatim herein.

35.     The Receivership Defendants were operated by Schmidt as a securities fraud scheme since 2008.

36.     The Uniform Fraudulent Transfer Act has been enacted under District of Columbia law as the District of Columbia Uniform Fraudulent Transfer Act, D.C. Code §§ 28-3101-3111. ("DC UFTA").

37.     Because Schmidt operated the Receivership Defendants as a securities fraud scheme from their inception, all transfers of Receivership Assets to, for the benefit of, or at the request of the Defendants were made with the actual intent to hinder, delay or defraud the Receivership Defendants' creditors and were fraudulent transfers within the meaning of the DC UFTA, D.C. Code § 28-3104(a).

38.     The Receivership Assets transferred to, for the benefit of, or at the request of the Defendants may be recovered by the Receiver as fraudulent transfers under the DC UFTA.

39. The Receiver is entitled to, among other remedies, the avoidance of the transfer of Receivership Assets to, for the benefit of, or at the Defendants' request in accordance with DC Code §28-3107.

## COUNT TWO
### Fraudulent Transfer – Georgia Law
### (In the Alternative to Count One)

40. The Receiver incorporates paragraphs 1 through 33 set forth above as if set forth verbatim herein.

41. The Receivership Defendants were operated by Schmidt as a securities fraud scheme since 2008.

42. The Uniform Fraudulent Transfer Act has been enacted under Georgia law as the Georgia Uniform Fraudulent Transfer Act, O.C.G.A. §§ 18-2-70 to 18-2-81 ("GA UFTA").

43. Because Schmidt operated the Receivership Defendants as a securities fraud scheme from their inception, all transfers of Receivership Assets to, for the benefit of, or at the request of the Defendants were made with the actual intent to hinder, delay or defraud the Receivership Defendants' creditors and were fraudulent transfers within the meaning of the GA UFTA, O.C.G.A. § 18-2-74(a).

44. The Receivership Assets transferred to, for the benefit of, or at the request of the Defendants may be recovered by the Receivers as fraudulent transfers under the GA UFTA.

45. The Receiver is entitled to, among other remedies, the avoidance of the transfer of Receivership Assets to, for the benefit of, or at the Defendants' request in accordance with O.C.G.A. § 18-2-77.

## COUNT THREE
## Constructive Trust and Disgorgement

46. The Receiver incorporates paragraphs 1 through 33 set forth above as if set forth verbatim herein.

47. The Receiver has a claim and interest in funds belonging to the Receivership Defendants, along with any transfers, benefits, proceeds or their equivalent value that can be traced to those funds. The funds paid to and obligations satisfied on behalf of the Defendants constitute and are directly traceable to the funds of the defrauded investors. As such, they are impressed with a constructive trust and constitute Receivership Assets. The Defendants should be required to disgorge their ill-gotten gains.

48. Pursuant to principles of equity, the Receiver seeks the imposition of a constructive trust upon all funds paid to the Defendants and any property purchased, directly or indirectly, with those funds. The Receiver seeks disgorgement of all such assets, including 279 Mountain View.

## COUNT FOUR
## Unjust Enrichment

49. The Receiver incorporates paragraphs 1 through 33 set forth above as if set forth verbatim herein.

50. The Defendants were unjustly enriched by the Receivership Assets transferred to, for the benefit of, or at their request.

51. The Receivership Assets transferred to, for the benefit of, or at the Defendants' request constituted a benefit conferred upon the Defendants that they recognized and appreciated as a benefit.

52. The Defendants accepted and retained the benefit of the Receivership Assets transferred to, for the benefit of, or at their request.

53. Under the factual circumstances presented, it would be inequitable to permit the Defendants to retain the benefit of the Receivership Assets transferred to, for the benefit of, or at the Defendants' request since those Receivership Assets are the product of a securities fraud scheme and are composed solely of monies paid into the securities fraud scheme by unsuspecting investors.

WHEREFORE, the Receiver demands judgment in her favor and against the Defendants as follows: (i) for any and all Receivership Assets transferred to, for the benefit of, or at the Defendants' request, plus interest thereon, as well as for any applicable damages, costs of suit and attorneys' fees as may be authorized by law or otherwise; (ii) transferring ownership of 279 Mountain View to the Receiver; (iii) place 279 Mountain View in a constructive trust for the benefit of the Receivership Estate; and (iv) for such other relief as the Court deems just and proper.

Date:   June 10, 2015                                                  Respectfully submitted,

/s/ David Daneman
David Daneman (DC Bar No. 467386 )
WHITEFORD, TAYLOR & PRESTON L.L.P.
*Counsel for the Receiver*
Seven Saint Paul Street
Baltimore, MD 21202-1626
Telephone: (410) 347-8729
Facsimile: (410) 234-2317